ON APPLICATION FOR REHEARING
The opinion issued on August 25, 1989 is hereby withdrawn and the following is substituted therefor.
Jerry T. Clark was convicted of cruelty to animals, in violation of Ala. Code 1975, § 13A-11-14. He was given a suspended sentence of 60 days in the county jail and was fined $250. Clark raises three issues on this appeal from that conviction.
 I
Clark argues that his arrest was unlawful and that, for that reason, his motion to suppress should have been granted. We agree.
Around 4:45 or 5:00 on the afternoon of February 22, 1988, Floyd Bryant had allowed his two four-month-old mixed breed dogs out of their pen while the pen was being cleaned. The dogs followed Mr. Bryant's son as he drove toward the garbage dump. About five or ten minutes after the dogs were out of his sight, Mr. Bryant heard two gunshots. One or two minutes later he heard a third gunshot.
Four or five minutes after that, Bryant observed the defendant driving a car out of the same dirt road the dogs had recently run down. Mr. Bryant walked down the road and discovered that both of his dogs had been shot. Bryant returned to his *Page 824 
house and telephoned the sheriff's department. He then saw the defendant go down the road, turn around, and come back. This was about ten minutes after he had first seen the defendant coming out of the road. He observed no other vehicles in the area.
Twenty or thirty minutes after Bryant had telephoned the sheriff's department, Covington County Chief Deputy Sheriff Bill Shaw arrived. After talking to Mr. Bryant, he went down the road and discovered the defendant's car parked in the road.
After Deputy Shaw briefly inspected the car, he observed the defendant walking toward him from a pasture. Shaw identified himself and told the defendant he was investigating a complaint that the defendant had killed two animals. When the defendant got closer, Deputy Shaw observed that he was wearing a .41 caliber Ruger magnum pistol, so he "stopped him and made him take it off." The deputy took the loaded weapon from the defendant and told the defendant he "needed" to go with him. The weapon seized from the defendant was subsequently determined to be the pistol which had killed the two dogs.
Deputy Shaw "made" the defendant go with him back up the road to his patrol car. Shaw radioed the sheriff's office and requested "them to send Terry Langford and Maxwell Hooks over."
When Officer Langford arrived, Deputy Shaw asked the defendant to be seated in Langford's car and read him hisMiranda rights. Then the deputy went back down the road and discovered the two dead dogs. He also dug a bullet out of the ground.
After he discovered the bullet, Deputy Shaw sent Mr. Bryant to Andalusia to sign a warrant. He told Terry Langford to tell the defendant that he was under arrest for cruelty to animals and to transport him to the county jail. The defendant was formally arrested at the jail on two warrants sworn out by Mr. Bryant that night.
On April 19, 1988, the defendant was tried in the District Court of Covington County. That court granted the defendant's motion to dismiss based on a warrantless misdemeanor arrest.
That same day, Mr. Bryant swore out a new warrant for the defendant's arrest for cruelty to animals. On June 7, 1988, he was tried in district court and was convicted. He appealed to the circuit court for a trial de novo. A complaint was issued on November 8, 1988. A jury convicted the defendant on November 14, 1988.
In denying Clark's motion to suppress the pistol and the bullets from that firearm, the trial judge stated, "As far as the suppression I will deny that motion even though its very close, if at all."
"For an arrest to be valid on a misdemeanor offense which was not witnessed by the arresting officer, the Officer must have an arrest warrant in his possession at the time of arrest."Ex parte Talley, 479 So.2d 1305, 1306 (Ala. 1985). See also Ala. Code 1975, § 15-10-3. "[W]hen a police officer arrests without a warrant, and the defendant objects to the introduction of evidence seized as an incident to the arrest, 'the burden is on the State to show that the arrest was lawful' pursuant to § 15-10-3." Ex parte Brownlee, 535 So.2d 218, 219
(Ala. 1988).
On original submission, the attorney general presented no legal justification for the defendant's arrest but argued that the pistol and the bullets it contained were properly admitted into evidence under the "inevitable discovery" rule of Nix v.Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). This argument was first advanced on appeal and was not presented at trial. There is absolutely no evidence contained in the record that, absent the unlawful seizure, the pistol and bullets would inevitably have been discovered lawfully. The inevitable discovery rule requires that "the prosecution . . . establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Williams, 467 U.S. at 444, 104 S.Ct. at 2509. See United States v. Hernandez-Cano, 808 F.2d 779, 784 (11th Cir.) (to avail themselves of inevitable discovery rule, police must have begun conduct leading *Page 825 
to discovery of evidence before they commit illegality), cert. denied, 482 U.S. 918, 107 S.Ct. 3194, 96 L.Ed.2d 682 (1987).
"[C]ourts must be extremely careful not to apply the 'inevitable discovery' rule upon the basis of nothing more than a hunch or speculation as to what otherwise might have occurred." W. LaFave, 4 Search and Seizure § 11.4(a) at 383 (2d ed. 1987); Hornsby v. State, 517 So.2d 631, 637 (Ala.Cr.App.), cert. denied, Ex parte Hornsby, 517 So.2d 639 (Ala. 1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1224, 99 L.Ed.2d 425
(1988); Musgrove v. State, 519 So.2d 565, 574 (Ala.Cr.App. 1986), affirmed, Ex parte Musgrove, 519 So.2d 586 (Ala. 1987), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611
(1988). "[T]he prosecution 'must establish, first, that certain proper and predictable investigatory procedures would have been utilized in the case at bar, and second, that those procedures would have inevitably resulted in the discovery of the evidence in question.' " 3 Search and Seizure § 11.4(a) at 385. Here, the State did not even attempt to satisfy its burden of proof under the inevitable discovery rule. Fortier v. State,515 So.2d 101, 110-12 (Ala.Cr.App. 1987), cert. denied,484 U.S. 1043, 108 S.Ct. 776, 98 L.Ed.2d 862 (1988).
On rehearing, the attorney general, citing W. LaFave, 1Search and Seizure § 2.2(a) at 322, argues that "the pistol and bullets taken from [the defendant] by Deputy Shaw were admissible since they were not the product of a search but were found in open view." Brief of Appellee in Support of Application for Rehearing at 9. The State correctly points out that no search occurred because deputy Shaw did not cross any constitutionally protected threshold in order to observe the pistol, which was in open view on the person of the defendant, who was walking along a public road.
As Professor LaFave points out, however, "while the characterization of an observation as a nonsearch plain view situation settles the lawfulness of the observation itself, it does not determine whether a seizure of the observed object would likewise be lawful." W. LaFave, supra, at 323 (emphasis added).
 "[E]ven when the plainly viewed object could be seized without interfering with a person on entering upon protected premises, it cannot be said that the right of seizure flows automatically from the plain view. Except when the object has been abandoned, the seizure itself constitutes an interference with 'effects' protected by the Fourth Amendment, and this means that in the absence of a search warrant some recognized ground for warrantless seizure, equally applicable outside plain view cases, must be present." Id. at 325.
Citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968), and § 15-5-30, 1975 Code of Alabama, the State next advances the "stop and frisk" exception to the warrant requirement as a permissible basis for seizure of the defendant's pistol, thus arguing that the seizure occurred not incident to the arrest, but incident to a pre-arrest investigatory detention.
It is true that when Deputy Shaw first approached the defendant and requested that he hand over his pistol, the officer stated that he was "investigating" a complaint that the defendant had shot two dogs. This initial detention and seizure of the firearm were authorized by §§ 15-5-30 and -31.
Those sections provide the following:
 "§ 15-5-30. Authority of peace officer to stop and question.
 "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place who he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions.
 "§ 15-5-31. Search for dangerous weapon; procedure if weapon or other thing found. *Page 826 
 "When a sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper has stopped a person for questioning pursuant to this article and reasonably suspects that he is in danger of life or limb, he may search such person for a dangerous weapon. If any officer finds such a weapon or any other thing, the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." (Emphasis added.)
While it is clear that § 15-5-31 authorized Deputy Shaw to remove defendant's pistol during his investigatory detention, it is equally clear that the section authorized Deputy Shaw to "keep" the pistol only until "the completion of the questioning." At that point, our statute mandated that Deputy Shaw return the weapon or lawfully arrest the defendant.
Because the subsequent arrest was not lawful, §§ 15-5-30 and -31 provide no grounds for legitimizing the continued possession of the firearm by the deputy. Thus, whether the seizure of the pistol is deemed to be the fruit of an unlawful arrest or the fruit of a lawful investigatory stop, the result is the same under our statutes. Section 15-10-3 prohibits a warrantless misdemeanor arrest for an offense not committed in the presence of the arresting officer, and § 15-5-31 prohibits all but a temporary seizure of a dangerous weapon unless followed by an arrest. Thus, while both the arrest[1] and the seizure[2] here were constitutionally valid under the Fourth Amendment, their invalidity here stems from the violation of state statutory requirements.
Although there is authority to the contrary, see, e.g., Statev. Eubanks, 283 N.C. 556, 196 S.E.2d 706 (1973), "the prevailing view . . . is that if a warrantless misdemeanor arrest is made upon probable cause but not for an offense [committed] in the presence of the officer, then the fruits of a search of the person incident to that arrest must be suppressed." W. LaFave, 1 Search and Seizure § 1.5(b) at 106. This result obtains, notwithstanding the constitutional
validity of the arrest, because a statutory provision "for a before-the-fact judicial determination of the grounds for arrest when it involves a misdemeanor not directly witnessed by the officer is an expression of a substantial right." Id. at 107.
 II
Clark's second and third arguments are without merit. Contrary to his second argument, the record shows that he waived arraignment. The record does not show that the trial judge refused to qualify the jury venire as requested by defense counsel. The third argument relates to an issue that was not preserved for review.
Clark's motion to suppress the pistol and the bullets it contained should have been *Page 827 
granted, because his arrest was illegal under Alabama law. The judgment of the circuit court is reversed, and this cause is remanded for further proceedings.
 APPLICATION FOR REHEARING GRANTED; RULE 39(k) MOTION DENIED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
All Judges concur.
[1] A warrantless arrest is constitutionally valid if the arresting officer has probable cause to believe that the person to be arrested has committed or is committing a crime. UnitedStates v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598
(1976). Cf. Welsh v. Wisconsin, 466 U.S. 740, 756,104 S.Ct. 2091, 2101, 80 L.Ed.2d 732 (1984) (White, J., dissenting) ("the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment, . . . and we have never held that a warrant is constitutionally required to arrest for nonfelony offenses occurring out of the officer's presence").
Information from a citizen eyewitness or victim informant can supply probable cause for arrest. McCants v. State,459 So.2d 992, 994 (Ala.Cr.App. 1984); Hadley v. State, 391 So.2d 158,161-62 (Ala.Cr.App.), cert. denied, Ex parte Hadley,391 So.2d 162 (Ala. 1980). See generally W. LaFave, 1 Search and Seizure
§ 3.4(a) at 718 (2d ed. 1987).
[2] If the arrest was constitutionally valid, the search was authorized, under the Fourth Amendment, as an incident to that arrest. New York v. Belton, 453 U.S. 454, 461, 101 S.Ct. 2860,2864, 69 L.Ed.2d 768 (1981); United States v. Robinson,414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). *Page 1050