[No. 23005-4-II.  Division Two.  May 28, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. MAYME J. SIMMS, *Appellant*.

*Daniel Herbert Bigelow,* for appellant.

*Michael D. Smith, Prosecuting Attorney,* for respondent.

BRIDGEWATER, C.J. — Mayme June Simms appeals her conviction and sentence for kidnapping in the second degree. We hold that there was not sufficient evidence to prove that the 93-year-old alleged victim was incompetent and that there was no person who had lawful custody or control of him who failed to acquiesce in his movement and that therefore the State failed to prove "restraint" for the purposes of kidnapping. We reverse.

In October 1997, Simms was hired by Anita Diane Brateng to serve as a live-in housekeeper and caretaker for her father, Elmer Cook. Cook was then 93 years old, had poor sight and hearing, and needed help to live at home. Brateng was trustee of Cook's living trust and in this capacity handled all of Cook's finances.

In early November 1997, Cook decided to place the bank accounts he held as a cosigner with his daughter into his name alone. When Brateng confronted Cook about the accounts, Cook became angry and for the first time accused

Brateng of stealing from him. Brateng became convinced that Simms had been exerting undue influence over her father and fired Simms. But Simms refused to leave, insisting that only Cook could fire her and that he wanted her to stay. Brateng left Simms with Cook and returned to her home.

On November 13, 1997, Brateng, with her daughter and son, returned to her father's home to find Simms and Cook leaving. Simms was driving. Brateng attempted to physically block the car to keep them from leaving, but the car slowly proceeded on. Then Brateng's daughter pulled her car in front of the other car and blocked it. Brateng's son reached in the driver's window and wrestled the keys from Simms. Brateng called the police, but when they arrived, they told her that they did not have the legal authority to prevent Simms and Cook from leaving and advised Brateng to seek a restraining order. The sheriff told Simms not to leave and then left the scene. Soon after, Simms and Cook drove away.

Brateng initiated a police search for Simms and Cook, and later that evening they were found. Upon a search of the vehicle, police found a number of Cook's personal documents, including several checkbooks and a passport, the quitclaim deed to Cook's house, and enough clothes and food to last Simms and Cook several days. Simms was arrested and charged with kidnapping in the second degree and attempted theft in the first degree. After a jury trial, Simms was convicted on both counts. Simms moved for judgment notwithstanding the verdict and the court dismissed the attempted theft conviction, but refused to dismiss the kidnapping conviction. The court imposed an exceptional sentence.

Simms argues that there was insufficient evidence to convict her of kidnapping in the second degree because the State failed to prove that the victim was under "restraint" within the definition of the statute.

The elements of kidnapping in the second degree are set forth in RCW 9A.40.030 as follows:

> (1) A person is guilty of kidnapping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

"Abduct" is defined in RCW 9A.40.010:

> (2) "Abduct" means to *restrain* a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force[.]

(Emphasis added.) It is undisputed that Cook consented to the ride in the car and that no physical force, intimidation, or deception was used. Instead, the State alleged that Cook was incompetent and could not give consent and was therefore was under "restraint" within the meaning of the statute. The definition of "restrain" is also found in RCW 9A.40.010:

> (1) "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

The statute requires two prongs: (1) that the victim is an incompetent person[1], and (2) that the legal guardian or person or institution having lawful control or custody did not consent. At trial, the State focussed on the first prong of this test—that is, Cook's incompetency at the time of the alleged kidnapping. The court defined incompetency as when the person "cannot understand the nature and consequences of their interaction with others." Clerk's Papers at 15 (Jury Instruction No. 7).

The State failed to produce substantial evidence that Cook was mentally incompetent at the time of the alleged

---

[1] We do not address if there is a difference between "incompetent" persons and persons with incapacities because the issue has not been raised.

crime. Several witnesses testified that Cook was rational and intelligent in November. Clifford Turner, a friend of Cook's, testified that Cook was rational and intelligent when he saw him in November. Simms's daughter and son both testified that Cook appeared to be "on the ball" and spoke clearly and logically. An attorney Cook spoke with just days before the alleged kidnapping testified that Cook was able to communicate clearly and understood his advice. Another caregiver for Cook testified that Cook was "happy and aware." The State failed to produce a single witness to testify that Cook was mentally unable to make decisions when the events occurred in November. Cook's daughter testified that he had poor hearing and sight and because of this had trouble recognizing family members unless they spoke to him, but never said he was mentally incapacitated. Cook's son testified that Cook was very angry with his family, which was unusual for him, but did not say that he was mentally incompetent. Both of Cook's grandchildren testified, but neither said Cook was mentally incompetent. Although the State makes reference to Cook's testimony, in which he could not remember the date or the name of the President and failed to identify the defendant, this evidence, months after the alleged crime, does not show Cook's capacity at the time of the crime.

It is also significant that no petition had been filed nor had Cook been adjudged to have had any incapacity; no guardian or other person or institution had ever been appointed to have "control or custody" of him. Thus, without a showing that Cook was incapable of consenting, the State failed to show that Cook was restrained and thus failed to show he was kidnapped.

But a showing of incompetency does not end our inquiry. The State also had to show a lack of consent. The State claims it need only prove that the victim was an incompetent person and that no guardian or person with lawful control or custody consented in order to prove "restraint" despite Cook's consent. The State contends that it need not show that there was a guardian in existence or a person

with lawful control or custody who could have consented. Simms argues that because the victim in this case had not been previously adjudicated incompetent and no guardian for him had been appointed, as a matter of law he was capable at the time of the alleged crime of giving consent, and thus Simms cannot be found guilty of abducting him.

Review of a statute begins with its plain language. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). The reviewing court's obligation is to give effect to the intent of the Legislature. Where a statute is unambiguous, legislative intent is determined from the language of the statute alone. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988). Where the statute is ambiguous,

> a proviso in a statute must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith. Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions.

*State v. Wright*, 84 Wn.2d 645, 652, 529 P.2d 453 (1974) (citation omitted). Construction of a statute is a question of law which we review de novo under the error of law standard. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624, 87 A.L.R.4TH 627 (1989).

Cook was never judged to have any incapacity and no guardian or legal custodian existed for him at the time of the alleged kidnapping. Therefore, there was no person who could consent for him. By the State's reasoning, any person who drove Cook anywhere would be guilty of kidnapping. This result points out the problem in the State's argument.

■ In a sense, the State's argument amounts to a simple capacity test; that is, if the victim is found to have been without the capacity to give consent, then restraint occurs. But if the Legislature intended that to be the test, then it would not have included the language regarding a guardian's consent. For example, a person is guilty of the crime of indecent liberties when he has sexual contact with another person and "the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless[.]" RCW 9A.44.100(1)(b). Unlike the kidnapping statute, this statute clearly makes mental capacity the only issue; there is no additional requirement to prove the absence of the guardian's consent. The kidnapping statute requires proof that a guardian or legal custodian, who would give consent, had been appointed.

■ The State argues that Cook's daughter was his guardian or legal custodian because she was the trustee of his living trust. But being a trustee does not make one the guardian for the beneficiary or grant lawful control and custody of that person. Advancing age does not bestow upon an elderly person's children some type of natural guardianship. RCW 11.88, the guardianship statute, sets forth an elaborate methodology for dealing with incapacity and guardianship, including: that age or eccentricity alone is not enough to find incapacity (RCW 11.88.010(1)(c)); the right of counsel to represent the alleged incapacitated, even at public expense (RCW 11.88.045(1)(a)); a right to notice and a jury trial on the issue of incapacity (RCW 11.88-.045(3)); a right to have the incapacity proven by clear, cogent, and convincing evidence (RCW 11.88.045(3)); and reporting requirements (RCW 11.92.040), including a thorough reporting of the physical, emotional, and mental status and needs of the incapacitated person, with a plan to meet those needs (RCW 11.92.043).[2] We emphasize that guardianship is a unique legislative provision that gives

---

[2]We also note the legislative purpose of the provisions of the guardianship law as expressed in RCW 11.88.005:

certain specific or general powers to one person over another. "Incapacity" is not lightly declared nor is guardianship casually conferred. To confer some sort of natural guardianship on children is to bypass all the protections present in the statute, which clearly violates the Legislature's intent.

Therefore, there was not sufficient evidence to support the kidnapping conviction because the State failed to prove that the victim was incompetent at the time of the crime to consent to a car ride. In addition, we hold that the statute requires that if the incompetency exception exists, then a legal guardian or person or institution having lawful control capable of giving consent must have been appointed and have failed to give consent; since no guardian or person with lawful control or custody had been appointed, there was no kidnapping.

Because of our resolution of the matters, we need not address alleged errors either at trial or sentencing.

Reversed.

ARMSTRONG and HUNT, JJ., concur.

It is the intent of the legislature to protect the liberty and autonomy of all people of this state, and to enable them to exercise their rights under the law to the maximum extent, consistent with the capacity of each person. The legislature recognizes that people with incapacities have unique abilities and needs, and that some people with incapacities cannot exercise their rights or provide for their basic needs without the help of a guardian. However, their liberty and autonomy should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs.