[No. 22383-0-II.   Division Two.   December 17, 1999.]

THE STATE OF WASHINGTON, *Petitioner*, v. TODD D. BARKER, *Respondent*.

Arthur D. Curtis, Prosecuting Attorney, and *Richard Alan Melnick, Deputy*, for petitioner.

*William Kennard Thayer* of *Schauerman & Thayer*, for respondent.

MORGAN, J. — The question is whether evidence resulting from an arrest should be suppressed not because of any constitutional violation, but because the arresting officer lacked statutorily required training. The answer is no.

A police officer can exercise "peace officer powers"[1] if he or she is a "general authority Washington peace officer,"[2] a "limited authority Washington peace officer,"[3] a "specially commissioned Washington peace officer,"[4] or a "[f]ederal peace officer."[5] A police officer can also act as a private citizen under some circumstances.[6]

---

[1] RCW 10.93.050; *see also* RCW 10.93.030 (referring to "peace officer authority").

[2] RCW 10.93.070; RCW 10.93.020(3).

[3] RCW 10.93.080; RCW 10.93.020(4).

[4] RCW 10.93.090; RCW 10.93.020(5); *cf. Somday v. Rhay*, 67 Wn.2d 180, 181, 406 P.2d 931 (1965); *State v. Koetje*, 35 Wn. App. 157, 159, 665 P.2d 432 (city officer specially commissioned by sheriff had official authority to arrest in county territory outside city limits), *review denied*, 100 Wn.2d 1021 (1983).

[5] RCW 10.93.100; RCW 10.93.020(6).

[6] *State v. Bonds*, 98 Wn.2d 1, 7, 653 P.2d 1024 (1982) (Washington officers in Oregon "were only private citizens"), *cert. denied*, 464 U.S. 831 (1983), *implied*

According to both parties, this case involves a "[s]pecially commissioned Washington peace officer[.]"[7] Such an officer is one "commissioned by a general authority Washington law enforcement agency to enforce some or all of the criminal laws of the state of Washington, who does not qualify under this chapter as a general authority Washington peace officer for that commissioning agency, specifically including . . . specially commissioned full-time, fully compensated peace officers duly commissioned by the states of Oregon or Idaho."[8] "A specially commissioned Washington peace officer *who has successfully completed a course of basic training prescribed or approved for such officers by the Washington state criminal justice training commission* may exercise any authority which the special commission vests in the officer, throughout the territorial bounds of the state, outside of the officer's primary territorial jurisdiction under the following circumstances: (1) The officer is in fresh pursuit, as defined in RCW 10.93.120; or (2) [t]he officer is acting pursuant to [a] mutual law enforcement assistance agreement between the primary commissioning agency and the agency with primary territorial jurisdiction."[9] The Washington State Patrol (WSP) is a "general authority Washington law enforcement agency."[10]

In April 1996, the Oregon State Police (OSP), as "primary commissioning agency," and the WSP, as "the agency with primary territorial jurisdiction," were parties to a

---

*overruling on other grounds recognized by State v. Bargas*, 52 Wn. App. 700, 763 P.2d 470 (1988), *review denied*, 112 Wn.2d 1005 (1989); *State v. Harp*, 13 Wn. App. 239, 242, 534 P.2d 842 (city officer who lacked authority outside of city could properly arrest "as a private citizen"), *review denied*, 85 Wn.2d 1015 (1975); *see State v. Malone*, 106 Wn.2d 607, 608, 724 P.2d 364 (1986) (Washington's attempting-to-elude statute applies even if Idaho officer "has no authority, other than as a private citizen, to make an arrest in this state"); *cf., Irwin v. Department of Motor Vehicles*, 10 Wn. App. 369, 371, 517 P.2d 619 (1974) ("As a general rule, a peace officer has no official power to arrest beyond the territorial boundary of the state, city, county, or bailiwick for which he is elected or appointed.").

[7]The parties also agree, and thus we assume, that the officer involved here was not acting as a private citizen.

[8]RCW 10.93.020(5).

[9]RCW 10.93.090 (emphasis added).

[10]RCW 10.93.020(1).

"mutual law enforcement assistance agreement." Their agreement did not include any training requirements.

On April 18, 1996, OSP Officer Kathryn Wall was routinely patrolling I-205, a freeway that links Oregon and Washington by means of a bridge over the Columbia River. The river is the boundary between the two states at that location.

As a 14-year veteran of the OSP, Wall had successfully completed basic police officer training and subsequent annual training in Oregon. She had not, however, completed "a course of basic training prescribed or approved . . . by the Washington state criminal justice training commission."[11] She was specially commissioned by the WSP under the OSP-WSP mutual assistance agreement.

At 11:24 P.M., Wall was northbound on I-205, some distance south of the Columbia River bridge. She observed that one of the cars in front of her was travelling approximately 100 mph, following other vehicles too closely, and making unsafe lane changes. She was unable to catch the car before it reached the bridge. She tried to stop it on the bridge, but it continued into Washington.

The car stopped a few yards north of the bridge, near the exit to Highway 14 in Vancouver. Wall identified the driver as Todd Barker and called the WSP for assistance. When a WSP trooper arrived, he arrested Barker for driving in Washington while under the influence of intoxicants (DUI).[12]

The State of Washington filed a DUI charge in Clark County District Court. Barker moved before trial to suppress all evidence resulting from Wall's stop. He did not claim that Wall lacked probable cause to stop him for reckless driving in Oregon. He did claim, however, that Wall

---

[11]RCW 10.93.090. As far as we can tell from the record, no one had asked the Washington State Criminal Justice Training Commission to approve the basic training academy for Oregon State Police.

[12]*See* RCW 46.61.502. Apparently, the question of probable cause for this arrest, as opposed to Wall's arrest, has not yet been determined below.

lacked authority to stop him in Washington because she had not completed "a course of basic training prescribed or approved . . . by the Washington State Criminal Justice Training Commission."[13] Based on this void in Wall's training, he contended explicitly that she had stopped him illegally, and, implicitly but necessarily, that the illegality ought to be remedied by applying the exclusionary rule.

After a hearing, the district court concluded that "[t]he observations of Officer Wall would be sufficient to establish probable cause for defendant's traffic infractions of speed, improper lane changes and following too closely[,] and the crime of reckless driving."[14] It also concluded, however, that "[w]ithout proof that the Oregon State Police Officers' basic training has been approved by the Wash. St. Crim. Just. Train. Comm., Officer Wall had no authority to stop and detain defendant . . . as otherwise would have been provided by RCW 10.93.020(5) and RCW 10.93.090."[15] Based on the latter conclusion, it suppressed the evidence and dismissed the charge.[16] The superior court affirmed, and we granted discretionary review.

On appeal, Barker again claims, necessarily, (a) that Wall stopped him illegally, and (b) that the illegality should be remedied by applying the exclusionary rule.[17] We examine these propositions separately.[18]

---

[13]Br. of Resp't at 7.

[14]Conclusion of Law 3, Clerk's Papers at 13.

[15]Conclusion of Law 5, Clerk's Papers at 13.

[16]The State conceded that without the evidence resulting from the stop, it had insufficient evidence to warrant trial.

[17]The parties' opening briefs did not address the second question. As soon as we noted the omission, we ordered supplemental briefs that have now been received and reviewed.

[18]Barker has standing to raise these questions only if one or more of *his* rights were violated by Wall's lack of Washington-approved training. We *assume* that is the case, for neither party questions his standing and we did not call for supplemental briefs on standing. The record may show, however, that Wall treated Barker in exactly the same way as he would have been treated by an officer with Washington-approved training. If it does show that, it also shows that Wall's lack of Washington-approved training did not abridge *Barker's* rights, and that the

## I

The first proposition has two parts. (A) Was Wall's stop *constitutionally* illegal? (B) Was Wall's stop *statutorily* illegal?

## A

The first part involves two questions. (1) Was Wall's stop constitutional to the extent she was acting as a police officer? (2) Was Wall's stop constitutional to the extent she was acting as a private citizen?

The answer to the first question is yes. The federal and state constitutions require that a police officer have probable cause to arrest.[19] They do not require, under the circumstances present here, that a police officer have a warrant to arrest.[20] It is undisputed that Wall had probable cause to arrest Barker for the driving she observed in Oregon.[21] Hence, Wall's stop was constitutional to the extent she was acting as a police officer.

---

only issue is *Washington's* right to regulate foreign officers operating within its borders.

[19]U.S. Const. amend. IV; Wash. Const. art. I, § 7.

[20]RCW 10.31.100; *Bonds*, 98 Wn.2d at 9; *see also State v. Wilson*, 70 Wn.2d 638, 641, 424 P.2d 650 (1967).

[21]For at least three reasons, we cannot agree with the statement in *City of Wenatchee v. Durham*, 43 Wn. App. 547, 550, 718 P.2d 819 (1986), that an arrest outside the arresting officer's territorial jurisdiction is, for constitutional purposes, "just as unreasonable as an arrest without probable cause." (1) Although the statement cites *Bonds* and *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948), *implied overruling recognized by United States v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999), it is contrary to the former and unsupported by the latter. The *Bonds* court held that Washington officers who made an arrest in Oregon violated Oregon statutes but not the Fourth Amendment. *Bonds*, 98 Wn.2d at 7; *see also Malone*, 106 Wn.2d at 608 (Idaho officer in Washington assumed to be acting as private citizen). The *Di Re* Court was analyzing an arrest made by a New York and federal officer acting together within the boundaries of New York. *Di Re*, 332 U.S. at 595. (2) The statement in *Durham* seems contrary to other Court of Appeals cases, including *Harp*, 13 Wn. App. at 242 (city officer who lacked authority outside of city could properly arrest "as a private citizen"); *City of Clarkston v. Stone*, 63 Wn. App. 500, 502, 820 P.2d 518 (1991) (Washington officer in Idaho lacked authority to act as officer by issuing citation); and *Irwin*, 10 Wn. App. at 371 ("As a general rule, a peace officer has no official power to arrest beyond the territorial boundary of the state, city, county, or bailiwick for which he is elected or appointed."). (3) *Durham* seems internally consistent. It

The answer to the second question is yes also. The Fourth Amendment to the United States Constitution and Article I, section 7 of the Washington Constitution govern the conduct of police officers, but not the conduct of private citizens.[22] Hence, Wall's stop was constitutional to the extent she was acting as a private citizen.[23]

## B

Although Wall's stop was constitutional, it was not authorized by Washington statute. RCW 10.93.090 provides, as we have already seen, that a specially commissioned Washington peace officer *"who has successfully completed a course of basic training prescribed or approved for such officers by the Washington state criminal justice training commission"* may exercise authority under a special commission. By necessary implication, an officer who has *not* successfully completed such training may *not* exercise authority under a special commission. Because Wall had not completed such training, she was not entitled to exercise authority under a special commission.

The State argues that RCW 10.93.090 "was enacted to address the usual situation involving reserve officers," but not "to restrict the authority of fully commissioned officers

says, on the one hand, that "police officers have no official power to arrest an offender outside the geographical boundaries of their municipality," *Durham*, 43 Wn. App. at 549, but, on the other hand, that such an arrest, for constitutional purposes, "is just as unreasonable as an arrest without probable cause." *Id.* at 550. If a person acts without "official power to arrest," and not at the express or implied request of local officers, we do not perceive why the Fourth Amendment or Article I, section 7 would apply.

[22]*Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A.L.R. 1159 (1921); *State v. Smith*, 110 Wn.2d 658, 666, 756 P.2d 722 (1988), *cert. denied*, 488 U.S. 1042 (1989); *State v. Wolken*, 103 Wn.2d 823, 830, 700 P.2d 319 (1985); *State v. Birdwell*, 6 Wn. App. 284, 288, 492 P.2d 249, *review denied*, 80 Wn.2d 1009, *cert. denied*, 409 U.S. 973 (1972); *State v. Wolfe*, 5 Wn. App. 153, 155, 486 P.2d 1143, *review denied*, 80 Wn.2d 1002 (1971).

[23]*Bonds*, 98 Wn.2d at 7 (Washington officers in Oregon "were only private citizens"); *see Malone*, 106 Wn.2d at 608 (Washington statute applied even if out-of-state officer "ha[d] no authority, other than as a private citizen, to make an arrest in this state").

from other states who are pursuing people into this state."[24] Whether or not that approach is sensible, it is not what the statute says, and we have no authority to amend the statute.[25] Moreover, as Barker essentially argues, the legislature may have intended to give this state's criminal justice training commission the ability to ensure that Oregon and Idaho include in their police training programs a segment on how Washington law differs from their law.

The State further responds that the mutual assistance agreement between WSP and OSP eliminated all training requirements simply because it omitted them. RCW 10.93.130 provides that when two agencies form a mutual assistance agreement, "[t]he agency with primary territorial jurisdiction may require that officers from participating agencies meet reasonable training or certification standards or other reasonable standards." Like Barker and both courts below, we think that RCW 10.93.090 sets a basic training requirement that can be supplemented, but not eliminated, by more advanced requirements contained in a mutual assistance agreement. Concluding this part of our discussion, we hold that Wall violated RCW 10.93.090, but not the federal or state constitution.

## II

The remaining question is whether Wall's failure to comply with RCW 10.93.090 should be remedied by applying the exclusionary rule.[26] As indicated at the outset, the answer is no.

---

[24]Br. of Appellant at 6-7.

[25]The legislature, of course, can amend the statute if it desires the meaning urged by the State. We observe in passing that training requirements should appear in the definitional section that describes who qualifies for a commission (RCW 10.93.020(5)), not in the "powers" section that describes what a person can do *after receiving* a commission (RCW 10.93.090).

[26]Barker argues that we cannot consider this question because, even though the parties supplementally briefed it in response to our order, the trial court did not consider it. A Washington appellate court

has the authority to determine whether a matter is properly before the court, to perform those acts which are proper to secure fair and orderly review, and

When a violation of law is statutory but not constitutional, authorities like *Weeks v. United States*,[27] *Mapp v. Ohio*,[28] and *State v. Gibbons*[29] are not implicated. In *Weeks* the United States Supreme Court announced an exclusionary rule for Fourth Amendment violations. In *Mapp*, the same court applied its rule to the states. In *Gibbons*, the Washington Supreme Court fashioned an exclusionary rule for violations of Article I, Section 7 of the Washington Constitution.

When a violation of law is statutory but not constitutional, the court's initial task is the same as it always is when determining the meaning and effect of a statute: To carry out the legislature's intent, if that intent can be

---

to waive the rules of appellate procedure when necessary to "serve the ends of justice." RAP 1.2(c), 7.3; *see Kruse v. Hemp*, 121 Wn.2d 715, 721, 853 P.2d 1373 (1993); *City of Seattle v. McCready*, 123 Wn.2d 260, 269, 868 P.2d 134 (1994) (court with inherent discretionary authority to reach an issue not briefed by parties if the issue is necessary for decision). This court may raise an issue sua sponte and rest its decision on that issue. RAP 12.1(b); *Greengo v. Public Employees Mut. Ins. Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998). One factor that we have considered in determining whether to exercise this authority is to decide whether the issue is a purely legal one. *McCready*, 123 Wn.2d at 269. Generally, we request additional briefing. *See* RAP 12.1(b); *Greengo*, 135 Wn.2d at 812-13. However, if briefing is not necessary to full and fair resolution of the issue, we will, in the rare case, decide the issue without additional briefing. *See Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989); *Alverado v. Washington Pub. Power Supply Sys.*, 111 Wn.2d 424, 430, 759 P.2d 427 (1988).

*State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999); *see also State v. Peterson*, 97 Wn.2d 864, 869, 651 P.2d 211 (1982) (declining to "place form over substance" under such circumstances), *abrogated on other grounds, State v. Sledge*, 133 Wn.2d 828, 947 P.2d 1199 (1997); *Hall v. American Nat'l Plastics, Inc.*, 73 Wn.2d 203, 205, 437 P.2d 693 (1968) (appellate court has authority to "decide crucial issues which the parties themselves fail to present"); RAP 12.2 ("The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require."); RAP 12.1(b) ("If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court."). Here, it would be nonsensical to find a statutory violation, but ignore how the violation should be remedied.

[27]*Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914).

[28]*Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A.L.R.2d 933, *reh'g denied*, 368 U.S. 871 (1961).

[29]*State v. Gibbons*, 118 Wash. 171, 203 P. 390 (1922).

discerned.[30] If the legislature manifested an intent that the violation be remedied by excluding evidence, that intent controls.[31] If the legislature manifested an intent that the violation *not* be remedied by excluding evidence, that intent likewise controls.[32] If the legislature failed to address the question of remedy, or failed to manifest an intent that can be discerned, it left a void in the law that a court must cope with by analyzing and applying common law.[33]

The Washington cases comport with this framework. Some are not on point because the violation was both constitutional and statutory.[34] Some of the remainder have

---

[30]*State v. Sweet*, 138 Wn.2d 466, 477-78, 980 P.2d 1223 (1999); *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998); *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997); *American Legion Post 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991); *State v. Simms*, 95 Wn. App. 910, 915, 977 P.2d 647 (1999).

[31]An example is RCW 9.73.050, in which the legislature stated that information acquired in violation of Washington's privacy act, RCW 9.73, "shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state." Another example is RCW 46.61.470(1), in which the legislature stated that evidence from a "speed trap" shall not be "admitted . . . in any court at a subsequent trial." By mentioning these examples, we do not mean to imply that the legislature's intent must always be expressed on the face of the statute; in otherwise appropriate circumstances, its intent can also be implied from secondary sources such as legislative history.

[32]An example is RCW 9.73.090, in which the legislature stated that police, fire, emergency medical, emergency communication center, and poison center personnel may "[record] incoming telephone calls" and that law enforcement officers may "intercept, record, or disclose an oral communication or conversation." The legislature went on to state that "[c]ommunications or conversations authorized to be intercepted, recorded, or disclosed by this section shall not be inadmissible under [the exclusionary provision of Washington's privacy act] RCW 9.73.050." RCW 9.73.090(3).

[33]*Roberts v. Dudley*, 92 Wn. App. 652, 655, 966 P.2d 377 (1998) (citing BENJAMIN N. CARDOZO, THE NATURE OF JUDICIAL PROCESS 68-70 (1949)) *review granted*, 137 Wn.2d 1019 (1999).

[34]*E.g., State v. Wetherell*, 82 Wn.2d 865, 871, 514 P.2d 1069 (1973) (excluding evidence where police failed to inform the defendant, as required by statute, that he had the right to independent blood testing because "the intrusion into his body to extract the blood for analysis amounted to an unlawful search and seizure prohibited by the fourth amendment to the United States Constitution"); *City of Tacoma v. Houston*, 27 Wn.2d 215, 221, 177 P.2d 886 (1947) (excluding evidence obtained in violation of the Washington search warrant statute on grounds of both "constitutional *and* statutory proscriptions") (emphasis added).

remedied statutory violations by excluding evidence,[35] but none has stated that a statutory violation *always* (or *never*) begets exclusion.

Cases from other jurisdictions take a variety of approaches. Some are not on point because the violation was both constitutional and statutory.[36] Some, probably a majority, hold that if a statutory violation is not also a constitutional violation, and the statute is silent concern-

---

[35]*E.g., State v. Copeland*, 130 Wn.2d 244, 282, 922 P.2d 1304 (1996) (holding that "[w]here there is a violation of the court rule right to counsel, the remedy is suppression of evidence tainted by the violation"); *City of Spokane v. Kruger,* 116 Wn.2d 135, 145, 803 P.2d 305 (1991) (excluding breathalyzer results where the police failed to inform the minor defendant of his right to counsel under JCrR 2.11, in part because "suppression of any evidence acquired after a violation will serve as an effective deterrent to police misconduct"); *State v. Schulze*, 116 Wn.2d 154, 162, 804 P.2d 566 (1991) (clarifying *Kruger* by holding that exclusion of evidence obtained in violation of a defendant's right to counsel "is only warranted where . . . the evidence to be suppressed has been tainted by the violation"); *State v. Turpin*, 94 Wn.2d 820, 826, 620 P.2d 990 (1980) (excluding evidence where police failed to inform the defendant of her statutory right to independent blood testing, because "[e]vidence obtained unlawfully is excluded"); *State v. Anderson*, 80 Wn. App. 384, 388, 909 P.2d 945 (1996) (excluding evidence where police failed to inform the defendant of his statutory right to independent blood testing, because "Supreme Court precedent requires that a person who submits to a blood test at the direction of the State be informed of his/her statutory right to an additional test by a qualified person of his or her own choosing"); *State v. Krieg*, 7 Wn. App. 20, 26, 497 P.2d 621 (1972) (excluding evidence that violated Washington's pre-1975 statute granting implied consent to breathalyzer tests because "no remedy is presently available for enforcement of the statutory requirements, except to exclude the evidence unlawfully obtained").

[36]*E.g., State v. Cohen*, 191 Ariz. 471, 957 P.2d 1014, 1016 (Ct. App. 1998) (execution of search warrant without knocking violated statute and bore on "reasonableness inquiry under the Fourth Amendment" (citation omitted)); *State v. Rauch*, 99 Idaho 586, 586 P.2d 671, 677-79 (1978) ("basic right to be secure in a Person's home, guaranteed by the fourth amendment, has resulted in statutes like" Idaho's "knock and announce" statutes; evidence violating statute suppressed); *State v. Sakellson*, 379 N.W.2d 779, 784 (N.D. 1985) (compliance with knock and announce statute was "a constitutional imperative implicit in the fourth amendment prohibition against unreasonable searches and seizures"; evidence violating statute suppressed); *State v. Ribe*, 876 P.2d 403, 413 (Utah Ct. App. 1994) ("[B]ecause the violation of the Utah [knock and announce] statute produced an unreasonable search, we hold that the unlawful execution of the warrant in this case implicated a fundamental, constitutional concern and suppression is therefore appropriate."); *State v. Laflin*, 160 Vt. 198, 627 A.2d 344, 346 (1993) ("We hold that V.R.Cr.P. 3 was designed to both codify and enhance protections conferred by the Fourth Amendment, and that therefore the evidence seized should be suppressed under the exclusionary rule doctrine.").

ing remedy, evidence shall not be suppressed.[37] A few hold, as we do here, that if a statutory violation is not also a constitutional violation, and the statute is silent concerning remedy, the court must ascertain and effectuate the

---

[37]*E.g., Burrece v. State*, 976 P.2d 241, 244 (Alaska Ct. App. 1999) ("[E]xclusionary rule embodied in Alaska Rule of Evidence 412 has not been applied when the statute that has been violated is wholly unrelated to a defendant's constitutional rights."); *People v. Fournier*, 793 P.2d 1176, 1179 (Colo. 1990) ("Where . . . officer obtains evidence in violation of a statute or regulation, the exclusionary rule is not triggered unless the unauthorized conduct also amounts to a constitutional violation."); *State v. Gibson*, 106 Idaho 54, 675 P.2d 33, 37-38 (1983) ("[S]ince we deal here with the asserted violation of a state statute rather than a violation of a constitutional right, we refuse to invoke the exclusionary sanction . . . ."), *cert. denied*, 468 U.S. 1220 (1984); *State v. Johnson*, 318 N.W.2d 417, 437 (Iowa) ("[W]e refuse to exclude relevant evidence by applying the exclusionary concept to conduct which is not of constitutional magnitude."), *cert. denied*, 459 U.S. 848 (1982); *Beach v. Commonwealth*, 927 S.W.2d 826, 828 (Ky. 1996) ("Evidence should not be excluded for violation of the statute's provisions where no constitutional right is involved."); *State v. Matthieu*, 506 So. 2d 1209, 1212 (La. 1987) (Louisiana law "stresses the importance of constitutional violations in cases involving the exclusionary rule"); *Allen v. State*, 85 Md. App. 657, 584 A.2d 1279, 1286 ("Absent legislative authority for exclusion of evidence, the Constitution alone serves as the basis for suppression of evidence."), *cert. denied*, 323 Md. 1, 590 A.2d 158 (1991); *State v. Lunsford*, 507 N.W.2d 239, 243 (Minn. Ct. App. 1993) ("The exclusionary rule does not apply to technical violations of the statutes governing search warrants, where no constitutional violation is involved."); *State v. Gadsden*, 303 N.J. Super. 491, 697 A.2d 187, 193 ("New Jersey courts have held that the exclusionary rule is to be applied only in cases in which evidence has been seized in violation of a suspect's constitutional rights."), *cert. denied*, 152 N.J. 187, 704 A.2d 17 (1997); *People v. Dyla*, 142 A.D.2d 423, 536 N.Y.S.2d 799, 806 (1988) ("The exclusion from evidence of a voluntary confession is warranted pursuant to New York statutory and constitutional law only when it is shown that the confession has been obtained in violation of a constitutionally-protected right of the accused."), *appeal denied*, 74 N.Y.2d 808, 546 N.Y.S.2d 566, 545 N.E.2d 880 (1989); *State v. Droste*, 83 Ohio St.3d 36, 697 N.E.2d 620, 623 (1998) ("We have stated on many occasions that absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule."), *cert. denied*, 526 U.S. 1145, 119 S. Ct. 2021, 143 L. Ed. 2d 1032 (1999); Or. Rev. Stat. 136.432(1) ("A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by: (1) The United States Constitution or the Oregon Constitution[.]"); *Troncoso v. Commonwealth*, 12 Va. App. 942, 407 S.E.2d 349, 350 (1991) ("[The Virginia] Supreme Court has steadfastly refused to extend [the exclusionary] rule to encompass evidence seized pursuant to statutory violations, absent an express statutory provision for suppression."); *State v. Verkuylen*, 120 Wis.2d 59, 352 N.W.2d 668, 669 (Ct. App. 1984) ("Suppression is therefore required only upon a showing that evidence was obtained in violation of a constitutional right, or when a statute specifically requires suppression of illegally obtained evidence . . . .") (citations omitted).

legislature's intent.[38] A few suppress with little analysis or because the violated statute, though not required constitutionally, was closely related to a constitutional right.[39] Some reflect that the particular jurisdiction has devised its own test by statute or case law.[40] None holds, as far as we are aware, that if a statutory violation is not also a constitutional one, and the statute is silent concerning remedy, the court must *automatically* apply suppression as the remedy.

■ When the Washington legislature enacted RCW 10.93, it intended "that current artificial barriers to mutual aid and cooperative enforcement of the laws among general authority local, state, and federal agencies be modified pur-

---

[38]*E.g., Beach v. Commonwealth*, 927 S.W.2d 826, 828 (Ky. 1996) (refusing to apply an exclusionary rule when the intent of the statute was to establish implied consent); *People v. Stevens*, 460 Mich. 626, 597 N.W.2d 53, 62 (1999) ("Whether suppression is appropriate is a question of statutory interpretation and thus one of legislative intent.") (quoting *People v. Wood*, 450 Mich. 399, 538 N.W.2d 351, 355 (1995) (Boyle, J., concurring)); *State v. Berry*, 121 N.H. 324, 428 A.2d 1250, 1252 (1981) ("That the statute does not expressly require the exclusion of illegally obtained test results is not dispositive. The statute specifically provides that if the person's consent is not obtained, no test shall be administered. This language clearly indicates the legislative intent to preclude the State from using the results of chemical tests of a person's blood unless the person consents to the test.").

[39]*E.g., Clark v. State*, 555 So. 2d 823, 826 (Ala. Crim. App. 1989) (suppressing evidence seized pursuant to a statutorily invalid misdemeanor arrest even though the arrest and seizure were "constitutionally valid under the Fourth Amendment"); *Mason v. State*, 534 A.2d 242, 248, 254 (Del. 1987) (requiring satisfaction of "nighttime search" statute in addition to the requirements of the federal constitution); *State v. Rutherford*, 707 So. 2d 1129, 1132 (Fla. Dist. Ct. App. 1997) ("The [exclusionary] rule is properly applied in cases where evidence is obtained through a constitutional violation [or] a violation of a statute implementing or expanding on a constitutional right . . . ." (citations omitted)), *review denied*, 718 So. 2d 171 (1998); *Commonwealth v. Conway*, 2 Mass. App. Ct. 547, 316 N.E.2d 757, 761 (1974) (suppressing evidence obtained following arrest that violated statute requiring officer to witness misdemeanor arrest); *State v. McKnight*, 291 S.C. 110, 352 S.E.2d 471, 472 (1987) (holding that a search warrant was defective for failure to comply with a statute that enhanced constitutional requirement that search warrants be "supported by oath or affirmation").

[40]*E.g.*, N.C. GEN. STAT. § 15A-974; *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421, 426 (1985) (stating that evidence violating statute will be excluded only "where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy"); *State v. Fixel*, 744 P.2d 1366, 1368 (Utah 1987) (adopting Pennsylvania's approach).

suant to this chapter."[41] It did not intend to vest new statutory rights in individuals, for it expressly stated that "[t]he modification of territorial and enforcement authority of the various categories of peace officers covered by this chapter shall not create a duty to act in extraterritorial situations beyond any duty which may otherwise be imposed by law or which may be imposed by the primary commissioning agency."[42] Accordingly, it did not intend that individuals be able to invoke the exclusionary rule as the remedy for an out-of-state officer's lack of Washington-approved training, or, more specifically, that Barker be able to invoke the exclusionary rule as the remedy for Wall's lack of Washington-approved training. We conclude that the district court's order of suppression must be reversed.

Reversed and remanded to the Clark County District Court for further proceedings.

BRIDGEWATER, C.J., and SEINFELD, J., concur.

Reconsideration denied January 11, 2000.

Review granted at 141 Wn.2d 1017 (2000).

---

[41]RCW 10.93.001(2).

[42]RCW 10.93.001(4).