[No. 26211–4–I. Division One. August 6, 1990.]

THE STATE OF WASHINGTON, *Petitioner,* v. LEE WHITE, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for petitioner.

*Kim Dupuis,* for respondent.

PER CURIAM.—The State of Washington filed a motion for discretionary review of an order suppressing blood alcohol test results in the prosecution of Lee White for vehicular assault. A commissioner stayed the trial proceedings and referred the motion for discretionary review to this panel. We grant review, accelerate the matter pursuant to RAP 18.12, and reverse and remand for trial.

On August 26, 1988, Lee White drove a car across the center line of SR 204 and collided head on with a car driven by Leslie Deatherage. Deatherage was seriously injured in the accident.

Police officers at the accident scene suspected that White was under the influence of alcohol. Accordingly, an officer directed a paramedic to draw a blood sample from White for testing. The test ultimately revealed an alcohol concentration of .19 percent. Before the sample was drawn, the officer read a "Special Evidence Warning" to White. This warning included the statement "you have the right to additional tests administered by a qualified person of your own choosing and at your own expense." White did not

raise any questions about the right to the additional test and made no effort to obtain an additional test. The trial court found that White understood and comprehended the warning regarding the additional test.

On April 12, 1989, the State charged White with vehicular assault. White then moved to suppress the blood test result because the "at your own expense" language was improper under *State v. Bartels,* 112 Wn.2d 882, 774 P.2d 1183 (1989). Following a suppression hearing, the trial court entered the following pertinent findings:

1.5 Mr. White was born on January 13, 1967, and at the time of this incident was employed as a merchant seaman. He worked rotating tours on ships at sea. Before the accident occurred, he was planning to return to sea in about one week because he was short on funds.

1.6 From reviewing Mr. White's financial records, the court concludes that as a matter of fact he had enough of an amount of money to pay for a blood test in an account in Seattle although the account balance was modest. However, Mr. White's wallet had been seized by the arresting officer. Furthermore, he had no charge cards or other established credit history, nor did he have any immediate access to funds. Mr. White was not of the stature and long history of a resident of the county with substantial enough income for him to assume that he could probably get a blood test just on his own personal credit.

1.7 The court therefore concludes that he was indigent within the meaning of *State v. Bartells* [*sic*], 112 Wn.2d 882 (1989).

Based on these findings, the trial court concluded that:

2.1 In *State v. Bartells* [*sic*], *supra* at 889, the court states: In contrast, when the State has interfered with a driver's opportunity to make an intelligent judgment whether to submit to a blood alcohol test, we have suppressed the test results . . . (citations omitted) . . . We hold that the addition of the words "at your own expense" to an otherwise proper informed consent warning prevents an indigent defendant from making a properly informed decision whether or not to submit to a blood alcohol content test. These words should not be included as part of the advice given a person arrested for DWI.

This court holds that the application of the *Bartells* [*sic*] test is essentially a subjective test which must be viewed from the eyes of the particular defendant.

2.2 This court further concludes that the language "at your own expense" interfered with Mr. White's opportunity to make such an intelligent judgment about securing additional tests. He was misled by the warning because he did not subjectively know that he might be able to get a blood test just on his own personal credit. Since Mr. White's right to make an intelligent decision about additional tests was interfered with, the results of the State administered test should be suppressed. *State v. Turpin*, 94 Wn.2d 820 (1980).

The trial court entered an order suppressing the results of the blood test, and the State sought review.

The parties' arguments focus on the meaning of *State v. Bartels, supra*. The *Bartels* court ruled that informed consent warnings which include the "at your own expense" language are improper because they prevent an indigent defendant from making a properly informed decision whether or not to submit to a blood alcohol test. However, the "at your own expense" language is an accurate warning and is harmless beyond a reasonable doubt if the State establishes that the defendant had the financial ability at the time of arrest to obtain an additional blood test. *Bartels*, at 889–90. If the State does not establish the defendant's financial ability at the time of the arrest, then the blood test results must be suppressed. *Bartels*, at 889–90.

The State argues that the trial court erred in concluding that White did not have the requisite "financial ability" because the trial court found that White had enough money[1] in his bank account to pay for an additional blood test. We agree.

██ Under *Bartels*, the question of whether a defendant was "indigent" or had "financial ability" at the time of his or her arrest is an objective test. Nothing in *Bartels* suggests that the defendant's subjective understanding of his financial ability is relevant to the inquiry. Nor does the opinion suggest that "financial ability" or nonindigency requires that a defendant have immediate access to funds.

---

[1]An affidavit presented to the trial court indicated that an additional blood test, including blood draw and blood analysis, could cost as much as $128. White had over $300 in his bank account at the time of the accident.

Here, the court's findings satisfy the objective test for financial ability. White was employed as a merchant seaman and he had a modest, but sufficient, amount of money in his bank account at the time of his arrest. Therefore, White had the "financial ability" to pay for an additional blood test, and the warnings did not interfere with his decision regarding the blood test. Review is granted, the order of suppression is reversed, and the matter is remanded for trial.

Review denied at 115 Wn.2d 1032 (1990).