[No. 13166-8-II. Division Two. May 4, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CURTIS H. DUNIVIN, *Appellant.*

*John A. Hayes,* for appellant (appointed counsel for appeal).

*C.C. Bridgewater, Prosecuting Attorney,* and *Arlen R. Sturm, Deputy,* for respondent.

MORGAN, J. — Curtis Dunivin appeals his conviction for vehicular homicide. We affirm.

On May 9, 1989, Dunivin drove his car into the path of an oncoming motorcycle. The motorcycle rider died. Dunivin fled the scene, but Officers Rehaume and Fundingsland soon found him hiding in a yard nearby. He had been drinking, and he told Rehaume that he fled the scene because he was scared about being drunk. While investigating the

scene, Trooper O'Neill observed a still-foaming bottle of beer and a bottle of whiskey in the car.

Officer Rehaume and Trooper Batt took Dunivin to a local hospital. They informed him that a blood test could be performed without his consent, but that he had "the right to additional tests administered by a qualified person of your own choosing and at your own expense". A test administered at the State's direction showed a blood alcohol level of .19 percent. Dunivin did not request an additional test.

Dunivin was charged with vehicular homicide while under the influence of alcohol. He moved in limine to exclude the State's blood test, but the trial court denied the motion. The blood test results were admitted at trial, and the jury returned a verdict of guilty.

On appeal, Dunivin argues that the State's blood test should not have been admitted because the police misadvised him of his statutory right to seek an additional test. He also argues that the police lacked probable cause to believe that he had been driving under the influence when they directed that a blood sample be taken from him.

I

A person who submits to a blood test at the direction of the State has a statutory right to an additional test by a qualified person of his or her own choosing. RCW 46.61.506(5); *State v. Turpin*, 94 Wn.2d 820, 824-25, 620 P.2d 990 (1980). A person must be advised of such right when asked to submit to a test at the direction of the State. RCW 46.20.308(2); *Turpin*, 94 Wn.2d at 824-25.

An indigent person is entitled to be reimbursed from public funds for the cost of the additional test. CrR 3.1(f); *State v. Bartels*, 112 Wn.2d 882, 887-88, 774 P.2d 1183 (1989); *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 898, 774 P.2d 1187 (1989). It is wrong to advise an indigent person that he or she has a right to an additional test "at your own expense", and the remedy is to suppress the State's blood test. *Bartels*, 112 Wn.2d at 889-90; *see also Gonzales v. Department of Licensing, supra*. It is not wrong

to advise a nonindigent person in the same way, and at least when the advice precedes *Bartels*,[1] no remedy is required. *Bartels*, 112 Wn.2d at 889-90; *see also Gonzales v. Department of Licensing, supra.*

*Bartels* involved a charge of driving under the influence, and the State argues that it should not be extended to vehicular homicide cases like the one at bar. Correctly, the State points out that the DWI defendant in *Bartels* had the right to withdraw his implied consent, RCW 46.20.308(5), whereas a vehicular homicide defendant has no such right. RCW 46.20.308(3). Based on this distinction, it concludes that no harm can come from misadvising a vehicular homicide defendant that he has a right to an additional test only at his own expense.

We disagree. Although a vehicular homicide defendant is not faced with making "a properly informed decision whether or not to submit to a blood alcohol content test", *Bartels*, 112 Wn.2d at 889, RCW 46.20.308(3), he or she is still faced with making a decision on whether to ask for an additional blood test by a qualified person of his or her own choosing. If due to indigency he or she has a right to an additional test at state expense, yet is misadvised that such a test must be at his or her own expense, he or she may be prevented from making the latter decision in a properly informed way. In this situation, it cannot be said that the advice is correct or even nonprejudicial.[2]

Further, the State argues that any prejudice to Dunivin comes not from the misadvice that he was given, but from his failure to retest the State's sample prior to trial. It points out that the sample it took was frozen and stored prior to trial; that Dunivin would have been allowed to retest it had he asked to do so; and that retesting would

---

[1] The *Bartels* opinion was filed June 29, 1989.

[2] Incidentally, the Supreme Court has recently applied *Bartels* to a vehicular homicide case. *State v. Schulze*, 116 Wn.2d 154, 165-66, 804 P.2d 566 (1991). We acknowledge, however, that it did so without considering the distinction argued for here.

have given him the same information that he would have obtained from an additional test performed by a qualified person of his choosing.

We disagree again. The purpose of granting the defendant a right to have an additional test performed is to afford him or her an opportunity to obtain evidence with which to impeach the State's blood test results. *Bartels*, 112 Wn.2d at 887; *State v. Stannard*, 109 Wn.2d 29, 35, 742 P.2d 1244 (1987). The State's results can be faulty because its sample was contaminated when drawn, contaminated in the interim between being drawn and being tested, switched inadvertently with another sample prior to testing, or tested improperly. Retesting the State's sample will not reveal error arising from any of these reasons except the last. Thus, it cannot be said that retesting substitutes for an additional test in such a way as to obviate prejudice to the defendant.[3]

Lastly, the State argues that Dunivin was not indigent within the meaning of *Bartels*. Thus, it says, he was not misadvised when he was told that he would have to obtain an additional test at his own expense.

■ We agree. For present purposes, a defendant is indigent if on date of arrest he or she is financially unable to obtain an additional blood alcohol test at his or her own expense. CrR 3.1(f); *Bartels*, 112 Wn.2d at 888, 889, 890; *Gahagan v. Department of Licensing*, 59 Wn. App. 703, 708, 710, 800 P.2d 844 (1990). It has been noted that in Snohomish County in August 1988, the cost of such a test was "as much as $128", *State v. White*, 58 Wn. App. 713, 716 n.1, 794 P.2d 875, *review denied*, 115 Wn.2d 1032 (1990), and we infer the cost would have been similar in Cowlitz County in May 1989. The question, then, is whether Dunivin was financially able to obtain a test costing as much as $128 on May 9, 1989.

■ The trial court did not address this question, and ordinarily we would remand so that it could do so. *Bartels*, 112

---

[3]This result is buttressed to some extent by the wording of the statute, RCW 46.61.506(5). It says that the defendant has a right to have an additional test "administered" by a qualified person of his choice, and it would seem to us that to "administer" a blood test is to draw the blood as well as to test it.

Wn.2d at 890. In our view, however, a remand would be useless in this case.[4] At trial, the person with whom Dunivin resided testified that he was employed as a logger on May 9, 1989, and that his employment was not slack as of that date. A neighbor testified that she had known him about a year, and that he "was usually pretty busy, he used to work all the time". He himself testified that he had worked for Smith Logging for 10 years. From these facts, it appears that Dunivin was financially able to obtain an additional test costing $128 or less. Thus, he was not misled, or at least not prejudiced, when told that he would have to obtain such a test at his own expense.

## II

Dunivin's second argument is that the State's blood test should not have been admitted because when the police seized the blood they lacked probable cause to believe that he had been operating a motor vehicle under the influence of intoxicants. He asserts that the taking of the sample violated his rights against unreasonable searches and seizures under the Fourth Amendment and his right to privacy under article 1, section 7 of the Washington Constitution.

Dunivin did not make this argument at trial. Nevertheless, it can be raised for the first time on appeal because it constitutes an assertion of constitutional error.[5] RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988).

---

[4]Implicitly, the Supreme Court adopted this approach in *Schulze*, 116 Wn.2d at 166. In that case, the trial court did not determine indigency for purposes of *Bartels*, perhaps because trial court proceedings were concluded before *Bartels* was decided. The Supreme Court, however, did not remand to the trial court for a fact-finding hearing. Instead, it determined nonindigency from lack of a claim of indigency and the fact that the defendant retained counsel at trial and on appeal.

[5]At one point in his brief, the defendant says that this claim is one involving the ineffective assistance of counsel. The apparent intent is to insure that the claim will be treated as one of constitutional magnitude. Assuming, however, that ineffective assistance is intended as a separate claim of error, it obviously lacks merit.

Taking a blood sample is a search and seizure within the meaning of the Fourth Amendment and article 1, section 7. *State v. Judge*, 100 Wn.2d 706, 711, 675 P.2d 219 (1984). An officer has authority to seize a sample of the defendant's blood if he or she has probable cause to believe that the defendant was driving while intoxicated and committed the crime of vehicular homicide. RCW 46.20.308(1); *State v. Rangitsch*, 40 Wn. App. 771, 775, 700 P.2d 382 (1985) (citing *Judge*, 100 Wn.2d at 712, and RCW 46.20.308(1)). Probable cause exists

"where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979) (quoting *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974)). When officers are acting in concert, it is proper to determine probable cause from the information available to all of them. *State v. Maesse*, 29 Wn. App. 642, 647, 629 P.2d 1349, *review denied*, 96 Wn.2d 1009 (1981). Here, the smell of alcohol on Dunivin's breath, his statement that he was afraid he was drunk, the fact that he fled the scene, the presence of alcohol in the car, and the circumstances of the accident constituted facts sufficient to warrant a reasonable person in a belief that Dunivin had been operating a motor vehicle while under the influence of intoxicants.

Affirmed.

PETRICH, C.J., and ALEXANDER, J., concur.

Reconsideration denied July 16, 1992.

Review denied at 120 Wn.2d 1002 (1992).