516

[No. 19390-0-III. Division Three. December 20, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. LOGAN C. BALDWIN, *Petitioner*.

518

*Logan C. Baldwin*, pro se.

*Dominic M. Bartoletta*, for petitioner.

*Steven J. Tucker, Prosecuting Attorney*, and *Patrick T. Johnson, Jr.*, and *Brian C. O'Brien, Deputies*, for respondent.

SCHULTHEIS, J. — Washington's implied consent statute, RCW 46.20.308, authorizes a police officer who reasonably believes that a driver is under the influence of alcohol or drugs to ask the driver to take a breath or blood test. The driver is deemed to have given consent, but may refuse. Refusal will result in various repercussions, including the admissibility of the refusal into evidence at a subsequent criminal trial. RCW 46.20.308(2); RCW 46.61.517.

Logan Baldwin was stopped on suspicion of driving under the influence. He admitted to a police officer that he had drunk one glass of wine and had taken an antidepressant—amitriptyline—the night before. When a breath test revealed he was within the legal limit for alcohol consumption, the officer decided a blood test was needed to

determine whether a drug agent was responsible for Mr. Baldwin's obvious impairment. Mr. Baldwin refused to allow a blood test. His refusal was admitted into evidence at trial and he was convicted by a district court jury of driving under the influence.

On appeal, Mr. Baldwin contends the implied consent statute is unconstitutional as applied to drug cases and argues that refusal to submit to a blood test for drugs may not be referenced in a criminal trial. Pro se, Mr. Baldwin contends the statute does not authorize blood draws based on suspicion of drug impairment, citing *City of Kent v. Beigh*, 102 Wn. App. 269, 6 P.3d 1211 (2000), *aff'd*, 145 Wn.2d 33, 32 P.3d 258 (2001). Because we find that a blood test for drugs is justified under these circumstances, admission of Mr. Baldwin's refusal complied with legislative intent, and the Washington Supreme Court rejected the Court of Appeals' reasoning in *Beigh*, we affirm.

FACTS

On an afternoon in May 1999, Washington State Trooper David Fenn saw a motorcycle run a stop sign, swerve into the opposing lane, stop, and almost fall over as the driver got off. Trooper Fenn approached the driver, Mr. Baldwin. As Mr. Baldwin fumbled for his driver's license, the trooper noticed the odor of intoxicants on his breath and observed poor finger coordination, bloodshot eyes, and slurred speech. When asked if he had been drinking, Mr. Baldwin replied that he had drunk one glass of wine at lunch. The trooper then asked if Mr. Baldwin was taking any medications. He answered that he had taken amitriptyline the night before, that it made him tired, and that he had come home from work one day last week because the medication made him so tired.

Mr. Baldwin flunked the field sobriety tests. Trooper Fenn arrested him and read him his *Miranda*[1] rights. After driving Mr. Baldwin to the patrol office, Trooper Fenn read

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

him the implied consent warnings. These warnings included notice that refusal to take the breath test could result in revocation of his license and admission of the refusal in a subsequent criminal trial. RCW 46.20.308(2). Mr. Baldwin agreed to take the BAC Verifier DataMaster breath test for alcohol. When the results showed alcohol concentration levels below .07, Trooper Fenn decided that alcohol alone could not account for Mr. Baldwin's level of impairment. Consequently, he gave Mr. Baldwin the implied consent warning again, this time specifically for a blood draw to test for drugs. Mr. Baldwin signed an agreement to take the blood test, but as he and the trooper were en route to the hospital for the test, Mr. Baldwin changed his mind, claiming fear of needles. Trooper Fenn asked him if he wanted to consult with anyone before making this decision. Mr. Baldwin said no, that he was sure he did not want to take the test. The trooper drove Mr. Baldwin home, where Mr. Baldwin voluntarily showed the trooper the prescription for amitriptyline and agreed that a label on the bottle warned against driving and against mixing the medication with alcohol.

The State charged Mr. Baldwin with driving under the influence of intoxicants and/or drugs. The district court trial was set for August 26, 1999. On August 16, the district court convened a hearing on Mr. Baldwin's motion in limine to exclude the testimony regarding the implied consent warnings and his refusal to take the blood test. The prosecutor commented that the proceedings sounded like a suppression hearing rather than a motion in limine. Mr. Baldwin argued that the trooper did not have probable cause to request a blood test, and consequently no basis to report his refusal to submit to the test. When asked if the trial court would suppress the refusal, the court responded, "I can't think of any reason, well it is not entirely before me. Unless there is some new evid[ence,] some good reason or some law ah, I can't see any reason to suppress." Clerk's Papers at 31. The parties agreed to exclude any testimony that Trooper Fenn had received drug recognition training.

On the day of trial, Mr. Baldwin again asked the court to exclude the refusal testimony, arguing that the trooper had no expert basis for his observations of Mr. Baldwin's alleged impairment. Because the only reason to admit Mr. Baldwin's refusal of the blood test was to infer that he was trying to hide evidence, he argued, the prejudice of this evidence outweighed its probative value. In particular, Mr. Baldwin did not want Trooper Fenn to testify that the reason he asked for the blood test was because he believed Mr. Baldwin's impairment was greater than the breath test indicated. The trial court expressed bewilderment that the State agreed to exclude evidence of the trooper's drug recognition expertise, but denied the motion to exclude the refusal.

Trooper Fenn testified, reporting Mr. Baldwin's statements, his general cooperation with the investigation, and his refusal to take the blood test due to fear of needles. The jury heard from other State's witnesses, including a doctor who described the effects of amitriptyline and the drug's lingering effects in a person's system. Mr. Baldwin offered no witnesses and did not testify. The jury returned a verdict of guilty.

On appeal to the superior court, Mr. Baldwin first raised the issues of the constitutionality of the implied consent statute as applied to the blood test, and the statutory authority for admissibility of the refusal to submit to a blood test. The superior court affirmed his conviction. This court accepted discretionary review of the superior court's decision. RAP 2.3(d).

CONSTITUTIONALITY OF IMPLIED CONSENT AS APPLIED TO
DRUG CASES

■ Mr. Baldwin first challenges the constitutionality of the implied consent statute as applied to driving under the influence (DUI) drug cases. He contends DUI drug cases do not involve the exigent circumstances that would support an exception to the warrant requirement for searches and

seizures. We presume a statute is constitutional, and Mr. Baldwin must prove its unconstitutionality—as it applies to him—beyond a reasonable doubt. *State v. Shultz*, 138 Wn.2d 638, 642, 980 P.2d 1265 (1999), *cert. denied*, 529 U.S. 1066 (2000).

■ Preliminarily, the State argues that Mr. Baldwin waived this issue because he did not raise it in a pretrial suppression motion as required by CrRLJ 3.6 and LCrRLJ 8.2. Generally a motion to suppress must be in writing, supported by an affidavit or document setting forth the relevant facts. CrRLJ 3.6. The local rule provides that motions to suppress must be filed three weeks before the hearing and must be heard at least one week before trial. LCrRLJ 8.2(d). However, the trial court may waive these requirements. LCrRLJ 8.2(d). Although a party waives a motion to suppress by failing to bring such a motion in a reasonable time, courts may allow such motions at any time before the case is called to trial. *See State v. Baxter*, 68 Wn.2d 416, 422, 413 P.2d 638 (1966) (defendant must bring motion to suppress within "reasonable time" before trial to allow trial court to rule; a motion after conclusion of the State's case is untimely). The purpose of the rule is to allow the trial court an opportunity to fully consider the motion. *Id.* There is no question here that Mr. Baldwin failed to comply with CrRLJ 3.6 when he did not file a written pretrial motion to suppress, but the court heard arguments and ruled on the merits. Because the trial court reached the suppression issue before trial, we find that Mr. Baldwin did not waive the issue.

■ On the other hand, it is also true that Mr. Baldwin did not challenge the constitutionality of the implied consent statute before or during trial. Generally this court will not address issues raised for the first time on appeal, unless the claimed error affects a constitutional right and prejudices the defendant. *State v. Williams*, 137 Wn.2d 746, 749, 975 P.2d 963 (1999). Mr. Baldwin challenges the implied consent statute as a violation of his constitutional right to be free of unlawful searches and seizures. He contends the

application of the statute caused his refusal to submit to the blood test to be admitted at trial, prejudicing his defense. Although the prejudicial effect of the admission of this evidence—even if error—is questionable, the importance of the constitutional rights involved and the unique nature of Mr. Baldwin's argument support acceptance of this issue for review.

■■ The taking of a blood sample is a search and seizure within the meaning of the Fourth Amendment and article I, section 7 of the Washington Constitution. *State v. Dunivin*, 65 Wn. App. 501, 507, 828 P.2d 1150 (1992). It is now well established by both the United States Supreme Court and the Washington Supreme Court that the State can constitutionally force a defendant to submit to a blood alcohol test. *State v. Bostrom*, 127 Wn.2d 580, 590, 902 P.2d 157 (1995) (citing *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)). *Schmerber*, 384 U.S. at 770-71, held that a blood test can be taken without consent to determine alcohol intoxication because the delay necessary to obtain a warrant threatens the destruction of the evidence. Alcohol dissipates quickly after drinking stops, and there may be little time to seek out a magistrate and secure a warrant. *Id.* Consequently, the warrantless seizure of blood is justified if incident to a lawful arrest and if warranted by a reasonable emergency. *State v. Wetherell*, 82 Wn.2d 865, 870, 514 P.2d 1069 (1973).

Citing studies that show how long various controlled drugs stay in a person's body, Mr. Baldwin contends no reasonable emergency supports a warrantless seizure of blood for drug testing. He notes that the State's expert witness testified that amitriptyline has a half-life of from 10 to 30 hours, providing plenty of time to obtain a search warrant from a neutral and detached magistrate. *Schmerber*, 384 U.S. at 770. He further argues that although the half-lives of the various controlled substances vary greatly, police officers are not required by the implied consent statute to know these half-lives, leaving room for indiscriminate searches and seizures based on less than

probable cause to believe a drug is in a particular suspect's system. We disagree.

■ Washington's implied consent statute, RCW 46.20.308, codifies the circumstances that allow for a blood drug test. An officer who has reasonable grounds to believe that an arrested driver is under the influence of a drug can request that driver to submit to a blood test administered by a qualified person. RCW 46.20.308(2). " 'Reasonable grounds,' when used in the context of a law enforcement officer's decision to make an arrest, means probable cause." RCW 46.04.455; *see Dunivin*, 65 Wn. App. at 507. And probable cause exists when the facts and circumstances known to the arresting officer are sufficient to warrant a reasonably cautious person's belief that an offense has been committed. *Dunivin*, 65 Wn. App. at 507. Trooper Fenn had probable cause to believe Mr. Baldwin was under the influence of intoxicants and was an impaired driver. He observed Mr. Baldwin run a stop sign, drive recklessly, and fumble with his license. The trooper also noticed his blood-shot eyes, smell of alcohol, and slurred speech. He conducted field tests for intoxication that Mr. Baldwin generally flunked. Under the terms of the statute, Trooper Fenn was authorized at this point to request a breath alcohol test. RCW 46.20.308. However, the breath test revealed that Mr. Baldwin was not driving under the influence of alcohol, RCW 46.61.502 (alcohol concentration of .08 or more).

When it became clear that Mr. Baldwin was not driving drunk, Trooper Fenn decided that the obvious signs of impairment could have been caused only by the effects of drugs or a combination of drugs and alcohol. Mr. Baldwin readily admitted that he had taken amitriptyline, a prescription antidepressant, 14 hours earlier. These observations and facts established reasonable grounds for the trooper to suspect that Mr. Baldwin's impairment was due at least in part to a drug. Although Mr. Baldwin's statement suggested that the drug might be amitriptyline, any number of drugs with any variety of half-lives might have been

present in his blood. *See State v. Baity*, 140 Wn.2d 1, 6, 991 P.2d 1151 (2000) (effects of a given drug vary from drug to drug depending upon amount ingested, the user's tolerance, and the drug's purity). A California case, *People v. Ritchie*, 130 Cal. App. 3d 455, 459, 181 Cal. Rptr. 773, 775 (1982), notes that requiring an arresting officer to determine the nature of an ingested drug and its speed of dissipation places a "completely unreasonable" and "unnecessary" burden on the prosecution. It would be ludicrous to expect an officer, even an officer with drug recognition training, to be able to diagnose in the field what precise drug has been ingested in a particular case. That is why the reliability of a blood test is required.

██ The three objectives of the implied consent statute are to (1) discourage driving under the influence of intoxicants, (2) remove driving privileges from those who drive under the influence, and (3) provide an efficient means of gathering reliable evidence of intoxication. *Bostrom*, 127 Wn.2d at 588 (citing *Dep't of Licensing v. Lax*, 125 Wn.2d 818, 824, 888 P.2d 1190 (1995)). Without knowing what drugs have been ingested or how long a particular drug stays in the system of a particular person, the arresting officer faces an emergency situation when the facts and circumstances indicate that a suspect has been driving under the influence of drugs or drugs and alcohol. The implied consent statute reflects the Legislature's recognition that the exigencies of a DUI drug arrest and investigation warrant the search and seizure of a suspect's blood, as long as the blood test is based on reasonable grounds and is conducted by a qualified person as provided in RCW 46.61.506(4). RCW 46.20.308(2). A blood test for drugs is both efficient and reliable. Because the implied consent statute meets the *Schmerber* requirements and the Legislature's objective to gather reliable evidence of drug intoxication, Mr. Baldwin fails to overcome the presumption that the statute is constitutional.

Mr. Baldwin next contends the trial court erred in admitting testimony that he refused to submit to the blood test. He notes that former RCW 46.61.517 (1987) provided for the admission of evidence that a person refused to take an alcohol blood or breath test, but did not provide for admission of evidence that a person refused to take a drug blood test. He contends the Legislature's omission of a parallel provision for drug testing indicates the refusal evidence is not considered relevant to criminal charges for driving under the influence of drugs.

RCW 46.61.517 is the evidentiary counterpart of the implied consent statute. *State v. Zwicker*, 105 Wn.2d 228, 232, 713 P.2d 1101 (1986). Former RCW 46.61.517 (1987) provided that "[t]he refusal of a person to submit to a test of the alcoholic content of the person's blood or breath under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial." An earlier form of this statute provided that refusal evidence must be admitted "without any comment" and with a jury instruction (if applicable) that "there shall be no speculation as to the reason for the refusal and that no inference is to be drawn from the refusal." Former RCW 46.61.517 (1983). In 1985, the statute was amended by deleting any reference to a jury instruction, and in 1986, it was amended to delete the phrase "without any comment." *State v. Long*, 113 Wn.2d 266, 270, 778 P.2d 1027 (1989). After the 1985 and 1986 amendments, no statutory impediments remained to admission of testimony regarding the refusal to submit to an alcohol blood or breath test.[2] Refusal evidence was deemed relevant and fully admissible to infer guilt or innocence. *Id.* at 272.

Recently, the Legislature again amended RCW 46.61.517 (effective July 22, 2001). The statute now reads: "The refusal of a person to submit to a test of the alcohol *or drug*

---

[2] In *Zwicker*, 105 Wn.2d at 233, 241-42, the court established that there are no federal or state constitutional barriers against using refusal evidence. *See also Long*, 113 Wn.2d at 271.

*concentration* in the person's blood or breath under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial." RCW 46.61.517 (emphasis added). Because Mr. Baldwin's citation and trial occurred under the 1999 version of RCW 46.61.517, our question is whether the former statute prevents admission of the refusal to take a drug blood test.

 One of the standards for statutory interpretation is expressio unius est exclusio alterius: when a statute specifically designates the things or classes of things upon which it operates, an inference arises that the legislating body intended all omissions. *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999). This presumption may be overcome by another tool of statutory construction: the inference that when a former statute is amended, or an uncertainty is clarified by subsequent legislation, the amendment is strong evidence of what the Legislature intended in the first statute. *Waggoner v. Ace Hardware Corp.*, 134 Wn.2d 748, 755, 953 P.2d 88 (1998).

 Each amendment to RCW 46.61.517 over its nearly 20-year history has removed impediments to the use of refusal evidence at a criminal trial. Over the same period of time, the driving under the influence statutes have been consistently amended to make convictions easier. *State v. Curran*, 116 Wn.2d 174, 181, 804 P.2d 558 (1991). RCW 46.20.308 provides that an arresting officer must inform a suspected intoxicated driver of the right to refuse breath or blood tests for alcohol or drugs and must warn him or her that refusal will lead to certain repercussions, including revocation of the driver's license and possible admission of the refusal in a criminal trial. RCW 46.20.308(2)(a), (c). Considering the implied consent statute's warning that drug test refusals may be used at trial, the fact that RCW 46.61.517 was recently amended to include admission of drug test refusals is a strong indication that the Legislature intended to include drug test refusals in former RCW 46.61.517 (1987). This interpretation better reflects the legislative intent to admit relevant evidence of driving

under the influence of intoxicants, whether alcohol or drugs. *Long*, 113 Wn.2d at 272-73.

Mr. Baldwin's contention that the trial court was required to balance the probative value of the refusal evidence against its prejudicial effect is also without merit. Pursuant to ER 403, even relevant evidence may be excluded if it is unfairly prejudicial. The trial court is vested with broad discretion in deciding to balance relevance against prejudice, *State v. Grimes*, 92 Wn. App. 973, 981, 966 P.2d 394 (1998), and is not required by ER 403 to conduct this balancing process on the record. Apparently Mr. Baldwin confuses the requirements of ER 404(b), regarding admission of prior bad acts, with the requirements of ER 403. Before the admission of relevant prior crimes or bad acts, the trial court must make the balancing test on the record. *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995). ER 404(b) is not implicated on these facts and Mr. Baldwin fails to prove that the trial court manifestly abused its discretion.

DRUG BLOOD TEST

Pro se, Mr. Baldwin contends Trooper Fenn had no statutory authority to request a drug blood test. Citing *City of Kent v. Beigh*, 102 Wn. App. 269, 272, 6 P.3d 1211 (2000), *aff'd*, 145 Wn.2d 33, 32 P.3d 258 (2001), he argues that blood tests are permitted only in the limited number of circumstances found in RCW 46.20.308(3). The statue provides:

(3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.

RCW 46.20.308. Division One held that the clear language of RCW 46.20.308(3) provided the only exceptions where a blood test could be used instead of a breath test. *Beigh*, 102 Wn. App. at 274.

Recently, however, the Washington Supreme Court accepted review of *Beigh*, rejected Division One's analysis, and affirmed on another basis. *City of Kent v. Beigh*, 145 Wn.2d 33, 32 P.3d 258 (2001). The Supreme Court found that the plain language of RCW 46.20.308(2) establishes the circumstances under which a driver is given the choice to either submit to a blood or breath test (depending on the circumstances enumerated in that section) or to lose his or her license. *Beigh*, 145 Wn.2d at 42-43. On the other hand, RCW 46.20.308(3) applies to those circumstances in which a blood or breath test may be administered *without the driver's consent. Id.* at 43. Mr. Baldwin was given the choice to submit to the blood test (based on the officer's reasonable grounds to believe he was under the influence of a drug, RCW 46.20.308(2)) or to lose his license and to possibly have his refusal admitted at trial. Accordingly, Trooper Fenn had statutory authority to request the blood test. RCW 46.20.308(2).

Affirmed.

KURTZ, C.J., and KATO, J., concur.