# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46428-4-II |
| Respondent, | |
| v. | |
| BUD RICHARD FLOWERS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Bud Richard Flowers appeals his conviction and sentence for first degree attempted murder and first degree unlawful possession of a firearm.  Flowers argues that (1) the criminal attempt statute violates article II, section 19 of the Washington Constitution; (2) the trial court's "substantial step" jury instruction relieved the State of its burden of proof; (3) the trial court erred by admitting a drawing of a gun found in his apartment; and (4) the State committed prosecutorial misconduct during its rebuttal closing argument.

We hold that (1) the criminal attempt statute does not violate article II, section 19; (2) the substantial step jury instruction did not relieve the State of its burden of proof; (3) the trial court did not abuse its discretion in admitting the drawing; and (4) the State did not commit prosecutorial misconduct.  Flowers also argues that the trial court erred in calculating his offender score, and we agree.  Thus, we affirm Flowers' conviction, but remand for resentencing based on Flowers' criminal history and offender score proven by a preponderance of the evidence.

FACTS

Flowers and Travis Russell were acquaintances, and the two men were building motorized bicycles together. Flowers went to Russell's home to discuss the bicycle they had been building. During the conversation, Flowers removed a gun from his waistband and set it on his leg. Flowers, in a serious tone, asked Russell, "how [he] wanted to spend the last five minutes of [his] life living, [praying,] crying or begging?" 1 Verbatim Report of Proceedings (VRP) at 52. Russell ran to the door, but Flowers blocked the door, saying, "Take it like a man." 1 VRP at 56. The two men fought, and eventually, Flowers shot Russell once behind the ear and twice in the abdomen. Russell fell to the ground and pretended to be dead. Flowers walked around Russell and left through the front door. Russell opened the front door and saw Flowers drive away. Russell saw his neighbor outside, told him that he had been shot, and collapsed. When police officers and paramedics arrived, Russell reported that Flowers shot him. Police officers arrested Flowers later that day.

The following day, Detectives David Voelker and Rich Fletcher obtained a warrant and searched Flowers' apartment. When Detectives Voelker and Fletcher arrived at Flowers' apartment, Andrea Hill, Flowers' girlfriend, was present and reported that a safe, computer, and television were missing. Hill told Detective Voelker that on the day of the shooting, she saw a black semi-automatic handgun on Flowers' bedside table. Hill attempted to leave the apartment with a bag, but allowed the detectives to search the bag before she left. In the bag, detectives found "a paper with a crude drawing of a gun with what appeared to be a homemade silencer or something on it" amongst "various documents listing" Flowers' name. 2B VRP at 350.

The State charged Flowers with first degree attempted murder with a firearm enhancement and first degree unlawful possession of a firearm. At trial, Russell testified to the shooting as detailed above. Russell also testified that Flowers' gun was a "22 long rifle Smith and Wesson . . . it looked like a little miniature Model 45." 1 VRP at 59. Russell's neighbors testified that they did not hear gunshots.

Detective Fletcher testified that he and Detective Voelker found "some type of a hand drawing on a piece of paper that appeared to be some type of a handmade silencing device or something." 2B VRP at 444, *see* 2B VRP at 350. Hill testified that she found the drawing of a gun when she was picking up garbage outside of Flowers' apartment. The State moved to admit the drawing at trial and Flowers objected. Flowers argued that "we don't know who drew it," it was not relevant, and it was prejudicial. 2B VRP at 462. The State argued that the drawing was relevant because it was "very similar to the gun actually used in this case and it goes to the question of both [Flowers'] intent and his actual possession of a handgun that he is charged with." 2B VRP at 463-64. The State further argued that the Flowers' objection "goes to weight rather than admission." 2B VRP at 463. The trial court admitted the drawing, finding that the drawing was relevant and more probative than prejudicial.

The trial court's jury instructions included the following:

INSTRUCTION NO. 7

A person commits the crime of Attempted Murder in the First Degree when, with intent to commit that crime, he does any act which is a substantial step toward the commission of that crime.

INSTRUCTION NO. 8

A substantial step is conduct that strongly indicates a criminal purpose and that is more than mere preparation.

Clerk's Papers (CP) at 25-26.

During its closing argument, the State argued:

Well, there's another piece of evidence that's interesting. And, in and of itself, it may not be definitive. But when you combine it with everything else, it adds up to the full picture. Andrea Hill is trying to take out a bag from [Flowers] apartment that has documents belonging to him and this drawing of a homemade silencer attached to a semi-automatic handgun. Now, maybe that's just a coincidence. Maybe it had just landed randomly in [Flowers'] yard as they'll say. But, when you look at the big picture, I think we can see that there's some things (inaudible) here. That the evidence is showing that he had a plot to kill [Russell] and that he put that into motion.

2C VRP at 599-600. Flowers did not object during the State's closing argument.

During the State's rebuttal closing argument, the State argued:

So at this point, everybody's got a role in this case. [Russell] had a role. That role was fighting for his life and fighting to stay alive. The neighbors had a role. Helping [Russell], seeing what happened, identifying [Flowers] and his car. Dr. Morrison had a role. Saving [Russell's] life. The police had a role, finding the evidence. Arresting [Flowers]. Everybody's had their role. But now it is your turn and it is your role as jurors in this case, when you review all of the evidence, to find him guilty and I'd ask you to do that. Thank you.

2C VRP at 632-33. Flowers did not object during the State's rebuttal closing argument.

The jury found Flowers guilty of first degree attempted murder while armed with a firearm and first degree unlawful possession of a firearm. On June 12, 2014, the trial court sentenced Flowers. Flowers agreed "that his criminal history . . . is as stated on the State's filed Statement

4

of Criminal History"[1] and that he did not dispute any of the listed convictions. 2C VRP at 647. The trial court found Flowers had an offender score of 10 for first degree attempted murder and 9 for first degree unlawful possession of a firearm. Based on Flowers' offender score, the trial court sentenced Flowers to 471 months. Flowers appeals.

## ANALYSIS

A.    CONSTITUTIONALITY OF THE CRIMINAL ATTEMPT STATUTE (RCW 9A.28.020)

Flowers argues that the criminal attempt statute violates the Washington State Constitution's single-subject and subject-in-title rule contained in article II, section 19, and therefore, his conviction must be vacated and the charges dismissed with prejudice. Because the criminal attempt statute does not violate article II, section 19, Flowers' claim fails.

We review allegations of constitutional violations de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). We presume that statutes are constitutional, and the party challenging the constitutionality of a statute bears the burden of proving the statute's unconstitutionality beyond a reasonable doubt. *State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012); *State v. Alexander*, 184 Wn. App. 892, 896, 340 P.3d 247 (2014), *review denied,* 182 Wn.2d 1024 (2015).

---

[1] The State filed a statement of criminal history on October 9, 2013, at the same time it filed the information. The statement of criminal history reflected four pending charges. Flowers pleaded guilty to the pending charges and was sentenced just before he was sentenced in this case. Flowers was sentenced for the four unrelated charges on June 3, 2014.

Article II, section 19 states, "No bill shall embrace more than one subject, and that shall be expressed in the title." *Id.* at 896. This provision establishes two specific rules: (1) the single-subject rule, and (2) the subject-in-title rule. *Id.*

In *Alexander*, we held "that the criminal attempt statute codified in RCW 9A.28.020 does not violate the Washington State Constitution's single-subject and subject-in-title rule contained in article II, section 19." *Id*. at 900. *Alexander* is controlling, and Flowers' constitutional challenge fails.

In a footnote, Flowers acknowledges that *Alexander* controls this issue, but contends that this court wrongly decided the issue, and invites us to revisit it. We decline Flowers' invitation to readdress the constitutionality of the criminal attempt statute because Flowers' argument fails to show that *Alexander* was wrongly decided. Thus, following *Alexander*, Flowers' claim that the criminal attempt statute is unconstitutional fails.

B.      SUBSTANTIAL STEP JURY INSTRUCTION

Flowers argues that the trial court erroneously defined "substantial step" in its jury instruction, which relieved the State of its burden to prove all the elements of the crime beyond a reasonable doubt. Br. of Appellant at 18. Specifically, he argues that (1) the instruction erroneously included the phrase "*indicates* a criminal purpose" instead of "corroborative of the actor's criminal purpose" as stated in *State v. Workman*,[2] and (2) the instruction's reference to "a criminal purpose" allowed the jury to convict based on intent to commit any crime, and not the

---

[2] 90 Wn.2d 443, 584 P.2d 382 (1978).

specific crime charged. Br. of Appellant at 18. Flowers did not object to the jury instructions at trial.

Flowers' claim fails under our decision in *State v. Davis*, 174 Wn. App. 623, 635, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013). In *Davis*, we considered and rejected the same arguments Flowers makes here. *Davis* specifically rejected the arguments that *Workman* requires the jury instruction to use the word "corroborates" rather than "indicates," and that the instruction allowed the jury to convict if the defendant's conduct indicated the intent to commit any crime. *Id.* at 635, 636-37 (holding that "the Supreme Court has not mandated use of the word 'corroborates,'" and "there is no authority that the State must show independent evidence of intent").

Flowers asks us to reconsider our decision in *Davis*. However, Flowers has not offered any authority for his interpretation of *Workman* or any authority to support his comment that *Davis* should be reconsidered. *Davis* is controlling, and we reject Flowers' assertion that the "substantial step" jury instruction was erroneous because it relieved the State of its burden of proving all the elements of the crime beyond a reasonable doubt. Flowers' challenge fails.

C.      ER 401, 403—DRAWING OF THE GUN

Flowers argues that the trial court erred under ER 401[3] and ER 403[4] by admitting a drawing of a homemade gun silencer. Specifically, Flowers argues that the "drawing of a homemade gun

---

[3] ER 401. Definition of "Relevant Evidence."

[4] ER 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

silencer" was not relevant because the State (1) did not present evidence linking Flowers to the drawing, and (2) did not allege that the shooter used a silencer. Br. of Appellant at 21. Flowers also argues that the drawing "carried a high risk of unfair prejudice."[5] Br. of Appellant at 22. We disagree.

1.  Legal Principles

The trial court has broad discretion to admit evidence, and we review the trial court's decision for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Id.* at 283-84. An abuse of discretion is found when "no reasonable person would take the view adopted by the trial court." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001). "Appellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion." *Lord*, 161 Wn.2d at 295. The weight of the evidence is a question for the jury, and we defer to the jury on issues of persuasiveness of the evidence and witness credibility. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

---

[5] Flowers asserts that the trial "court must balance the probative value and risk of unfair prejudice on the record." Br. of Appellant at 21. However, it appears that Flowers confuses the requirements of ER 404(b), regarding admission of prior bad acts, with the requirements of ER 403. Before the admission of relevant prior crimes or bad acts under ER 404(b), the trial court must conduct the balancing test on the record. *State v. Baldwin*, 109 Wn. App. 516, 528, 37 P.3d 1220 (2001), *review denied*, 147 Wn.2d 1020 (2002); *see State v. Gould*, 58 Wn. App. 175, 184, 791 P.2d 569 (1990). ER 404(b) is not implicated on the facts of our case. Therefore, the trial court was not required to balance the probative value of the drawing and the risk of unfair prejudice on the record. *Baldwin*, 109 Wn. App. at 528.

Evidence is relevant if it has "*any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401 (emphasis added); *Lord*, 161 Wn.2d at 294. "'The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible.'" *State v. Briejer*, 172 Wn. App. 209, 225, 289 P.3d 698 (2012) (quoting *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002)).

Relevant evidence is presumed admissible, but it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403, 402. "Trial courts have considerable discretion to consider the relevancy of evidence and to balance 'the probative value of the evidence against its possible prejudicial impact.'" *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014) (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)); *accord State v. Baldwin*, 109 Wn. App. 516, 528, 37 P.3d 1220 (2001).

2. Relevance

Flowers claims that the drawing was not relevant because the State did not present evidence linking him to the drawing. We disagree.

Detectives Voelker and Fletcher both testified that they discovered the drawing in Hill's bag amongst Flowers' documents, as Hill was leaving Flowers' apartment. A reasonable person could infer that the drawing belonged to Flowers because it was found at his apartment with his documents.

Flowers asserts that the drawing was not relevant because there was no allegation that the shooter used a silencer.[6]  Again, we disagree.

The drawing depicted a gun with a homemade silencer and was found at Flowers' home. Hill testified that she saw a handgun on Flowers' bedside table on the day of the shooting.  And, Russell's neighbors testified that they were home but did not hear gunshots.  Thus, under these circumstances and evidence, the drawing of a gun with a silencer would tend to show that Flowers had planned the shooting.  Therefore, a reasonable person could find that the drawing of a gun is relevant.[7]

### 3.  Prejudice Under ER 403

Flowers asserts that the drawing was unfairly prejudicial under ER 403.  We disagree

Flowers does not show that the danger of unfair prejudice substantially outweighed the probative value of the illustration.  *See* ER 403.  As explained above, the drawing was found in Flowers' residence amongst Flowers' documents.  It resembled the firearm used in the crime, and the victim's neighbors testified that they did not hear gunshots.  A reasonable person could find that a drawing of a gun similar to the gun used, drawn with a silencer where the neighbors did not hear gunshots is relevant.  While all such evidence is necessarily prejudicial to a defendant,

---

[6] Flowers misconstrues the State's relevance argument.  The State did not argue that the picture was relevant specifically to show the shooter used a silencer.  Rather, the State argued the picture was relevant because of the visual similarities between the gun used in the shooting and the gun drawn on the paper found in Flowers' apartment.

[7] To the extent that Flowers' suggests that the drawing was not persuasive evidence and therefore not relevant, his argument fails.  The weight or persuasiveness of the evidence is a question for the jury, and we defer to the jury on issues of persuasiveness of the evidence and witness credibility. *Thomas*, 150 Wn.2d at 874-75.

Flowers does not show how the drawing was unfairly prejudicial or that the unfair prejudice substantially outweighed the probative value, as he must do to succeed under ER 403. Thus, the trial court did not abuse its discretion in admitting the drawing of the gun. Flowers' claim that the trial court erred by admitting the drawing fails.

D.      PROSECUTORIAL MISCONDUCT

Flowers argues that the State committed prosecutorial misconduct by improperly arguing "that the jury's role was to find Mr. Flowers guilty." Br. of Appellant at 24. We disagree.

To prevail on a claim of prosecutorial misconduct, Flowers must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012)). Once a defendant has demonstrated that the prosecutor's conduct was improper, we evaluate the defendant's claim of prejudice under two different standards of review, depending on whether the defendant objected to the misconduct at trial. *Id.* at 760. If the defendant objected, he must "show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.*

If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61. The defendant is presumed to have waived any error by not objecting because objections are required to prevent additional improper remarks and abuse of the appellate process. *Id.* at 762. Therefore, when there is no objection, we apply a heightened standard requiring the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had

11

a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). When reviewing a prosecutor's misconduct that was not objected to, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

Flowers claims that the State committed misconduct by misstating the jury's responsibility. Br. of Appellant at 24. The relevant portion of the State's rebuttal closing argument is as follows:

> So, at this point, everybody's got a role in this case. [Russell] had a role. That role was fighting for his life and fighting to stay alive. The neighbors had a role. Helping [Russell], seeing what happened, identifying [Flowers] and his car. Dr. Morrison had a role. Saving [Russell's] life. The police had a role, finding the evidence. Arresting [Flowers]. Everybody's had their role. But now it is your turn and it is your role as jurors in this case, when you review all of the evidence, to find him guilty and I'd ask you to do that. Thank you.

2C VRP at 632-33.

Flowers did not object at trial. Even if we assume without deciding that the State misstated the jury's role, Flowers has not argued or demonstrated that the misstatement could not have been remedied with a curative instruction. Under *Emery*, Flowers is required to demonstrate that "'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). Because Flowers has not argued or demonstrated that a curative instruction could not have obviated any resulting prejudice, his claim fails.

E.      OFFENDER SCORE

Flowers argues that the trial court erred by considering "four pending charges" in calculating Flowers' offender score.  Br. of Appellant at 26.  Specifically, Flowers contends that the trial "court erred by increasing Mr. Flowers'[] offender score based on these four pending charges, absent any evidence that they ended in a conviction."  Br. of Appellant at 26-27.  We agree and remand for resentencing.

A trial court's sentence following a conviction depends on a defendant's offender score, which is calculated based on the defendant's current offenses and prior convictions.  RCW 9.94A.525, .530(1).  We review a sentencing court's calculation of an offender score de novo.  *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

In order to establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence.  RCW 9.94A.500(1); *Hunley*, 175 Wn.2d at 909-10.  The best evidence of a prior conviction is a certified copy of the judgment, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior convictions.  *Id*. at 910.  In addition, the State can meet its burden if the defendant affirmatively acknowledges the criminal history on the record.  *Id.* at 909.  However, the "mere failure to object to State assertions of criminal history at sentencing does not result in an acknowledgement."  *Id.* at 912.

Here, the State did not prove Flowers' criminal history by a preponderance of the evidence. Flowers was sentenced on June 12, 2014.  The State filed a statement of criminal history in October

2013. The statement of criminal history listed four unrelated pending charges. Although Flowers pleaded guilty to and was sentenced on the four "pending" charges prior to his being sentenced in this case, the State did not provide evidence of Flowers' conviction or guilty plea on those four "pending" charges to the trial court.[8] Instead, the State asserted:

> Okay. Your Honor, with that, [Flowers]—obviously, he was convicted by jury verdict of attempted murder in the first degree with a firearm enhancement. Awful—also unlawful possession of a firearm in the first degree. Based on that and his prior criminal history, which included another case that he pled guilty to within the last couple of weeks, he has an offender score of 10 on the attempted murder charge and 9 on the unlawful possession charge.

2C VRP at 648. Flowers did not affirmatively acknowledge that he had pleaded guilty to the four "pending" charges. Although Flowers did not object to the State's assertion that he pleaded guilty, his failure to object does not constitute an affirmative acknowledgement of criminal history. *Hunley*, 175 Wn.2d at 912.

The trial court erred by calculating Flowers' sentence based on the State's unsupported assertions of Flowers' criminal history. *See Hunley*, 175 Wn.2d at 915-16. Therefore, we remand to the trial court for resentencing based on Flowers' criminal history and offender score proven by a preponderance of the evidence.[9] On remand, the State can present any relevant evidence relating to Flowers' criminal history. *State v. Cobos*, 182 Wn.2d 12, 14, 338 P.3d 283 (2014).

---

[8] In an appendix to its brief, the State provides the felony judgment and sentence related to Cowlitz County cause no. 13-1-01025-6. The felony judgment and sentence shows that Flowers was sentenced for the four charges that appeared as pending on the State's statement of criminal history filed in October 2013. The felony judgment and sentence was not part of the record below.

[9] Notably, Flowers does not argue that the trial court's determination of his offender score is inaccurate, nor does he dispute that the four "pending" charges resulted in conviction.

No. 46428-4-II

We affirm, but remand for resentencing based on Flowers' criminal history and offender score proven by a preponderance of the evidence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.

15